NOT DESIGNATED FOR PUBLICATION

No. 113,954

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

VERNON J. AMOS,
*Appellant*,

v.

JAMES HEIMGARTNER,
*Appellee*.


MEMORANDUM OPINION

Appeal from Butler District Court; JOHN E. SANDERS, judge. Opinion filed December 18, 2015.
Affirmed.

*Nancy Ogle*, of Ogle Law Office, L.L.C., of Wichita, for appellant.

*Michael J. Smith*, of Kansas Department of Corrections, of El Dorado, for appellee.


Before ATCHESON, P.J., GARDNER, J., and BURGESS, S.J.


*Per Curiam*:  Inmate Vernon Amos received a disciplinary report due to his lewd behavior. When it came time for his disciplinary hearing, he refused to participate. The hearing officer found him guilty and assigned both a fine and 15 days of disciplinary segregation. Amos appealed to the Secretary of Corrections (Secretary); and when the Secretary upheld the hearing officer's decision, he filed a habeas corpus petition pursuant to K.S.A. 2014 Supp. 60-1501. The district court summarily dismissed the petition, and Amos appeals.

1

FACTUAL AND PROCEDURAL BACKGROUND

One afternoon in July 2014, two corrections officers at the Hutchinson Correctional Facility were supervising training officers when one noticed Amos staring at them "while having his hands down his pants mast[u]rbating." One of the officers filed a discipline report. When it came time for the disciplinary hearing, however, Amos refused to participate. The hearing officer found that Amos required staff assistance and assigned a staff member to assist in the hearing, which was held in absentia. According to the hearing officer's notes, the officer who authored the discipline report testified, and the hearing officer found Amos guilty of lewd acts in violation of K.A.R. 44-12-315. Although the hearing record is difficult to read, the parties agree that Amos received a sanction of 15 days' disciplinary segregation and a $15 fine.

Amos appealed to the Secretary, arguing that he received no notice of the hearing, was denied the opportunity to call witnesses or participate, and was retaliated against by the administrators of both the Hutchinson and El Dorado Correctional Facilities. The Secretary approved the decision, finding that the hearing officer had substantially complied with the applicable standards and procedures and that some evidence supported the decision.

Dissatisfied by this result, Amos filed a petition for habeas corpus. He alleged that the facility violated his due process rights by placing him in disciplinary segregation because the combination of his mental health diagnoses and previous stints in disciplinary segregation caused him psychological harm. He also claimed that the facility denied him procedural due process in a number of ways, such as by failing to provide him notice and denying him the opportunity to call witnesses.

The district court originally dismissed the petition as untimely, but after Amos filed a motion for relief from judgment, the district court reinstated the case. However,

the district court then dismissed the case on the merits, finding that disciplinary segregation did not implicate any constitutional rights, some evidence supported the violation, and Amos refused to participate in the disciplinary hearing.

Amos timely appealed.

ANALYSIS

*Did some evidence support the disciplinary actions*?

Amos argues that the disciplinary action was unsupported by the evidence. Specifically, he argues that because he did not participate in the hearing and raised other due process arguments in his petition, the evidence presented by the corrections officer at the hearing was somehow insufficient.

As a general rule, a K.S.A. 2014 Supp. 60-1501 petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature" in order for the petitioner to sustain his or her claim. *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). The district court may summarily dismiss the action "if, on the face of the petition, it can be established that the petitioner is not entitled to relief." 289 Kan. at 648. The same is true when a review of the undisputed or incontrovertible facts (such as those in the record) demonstrates that there exists no cause for granting the petition. 289 Kan. at 648-49; see K.S.A. 2014 Supp. 60-1503(a). An appellate court exercises unlimited review of a summary dismissal. *Johnson*, 289 Kan. at 649.

When a prisoner in a disciplinary proceeding challenges the sufficiency of the evidence, the decision will be upheld "if there was some evidence from which the conclusion of the administrative tribunal could be made." *Washington v. Roberts*, 37 Kan. App. 2d 237, 246, 152 P.3d 660 (2007). A reviewing court need not examine the whole

record, assess witness credibility, or weigh the evidence; instead, it simply must decide "whether there exists any evidence in the record to support the conclusion reached by the disciplinary board." 37 Kan. App. 2d at 246. Under this standard, even "'meager'" evidence can support the disciplinary board's findings provided that "'the record is not so devoid of evidence that the findings . . . were without support or otherwise arbitrary.'" *Anderson v. McKune*, 23 Kan. App. 2d 803, 808, 937 P.2d 16, *rev. denied* 262 Kan. 959, *cert. denied* 522 U.S. 958 (1997).

In this case, the record is not devoid of evidence. It includes the disciplinary report stating that the reporting officer witnessed Amos masturbating and the hearing officer's report, which provides that the reporting officer reaffirmed the disciplinary report at the hearing. Amos' lack of participation in the hearing does not detract from these facts. Amos has failed to show the evidence was insufficient to support the disciplinary action and, therefore, his appeal on this point must fail.

*Did the district court err in finding no due process violations*?

Next, Amos contends that the facility deprived him of a number of due process rights. The issue of whether due process has been afforded is a question of law over which this court exercises unlimited review. *Hogue v. Bruce*, 279 Kan. 848, 850, 113 P.3d 234 (2005). When, as here, an inmate raises an issue of procedural due process, this court engages in a two-step analysis. First, the court must determine whether the State deprived that inmate of life, liberty, or property. Only if those rights are implicated must the court determine "the extent and nature of the process which is due. [Citation omitted.]" 279 Kan. at 850-51.

Amos correctly points out—and the Secretary does not dispute—that fines implicate the Due Process Clause. See *Anderson*, 23 Kan. App. 2d at 807. With that first

4

prong of the analysis satisfied, the question becomes whether Amos received adequate process under the law.

It is well-settled Kansas law that in disciplinary proceedings

"the full panoply of rights due a defendant in criminal proceedings do not apply. An inmate's limited rights in a prison disciplinary proceeding include an impartial hearing, a written notice of the charges to enable the inmate to prepare a defense, a written statement of the hearing officer's findings as to the evidence and the reasons for the decision, and an opportunity to call witnesses and present documentary evidence." *Washington*, 37 Kan. App. 2d 237, Syl. ¶ 3.

As a preliminary note, Amos abandons a majority of his due process arguments on appeal. Instead, he focuses on two major issues: (1) the hearing itself and (2) his assignment to disciplinary segregation.

*The hearing*

Amos first argues that the facility violated his due process rights during the hearing by denying him the opportunity to call and question witnesses and by providing a staff assistant who failed to actually assist him. Although Amos characterizes his failure to appear at the hearing as a denial of his rights, the record notes in multiple places that Amos refused to participate. In fact, one document explains that he was not sworn in to testify because of his refusal. Amos' implication that the facility purposely denied him the opportunity to participate is unsupported by the record.

Turning to the issue of witnesses, our Kansas Administrative Regulations provide that an inmate who wishes to call witnesses at a disciplinary hearing must fill out a form requesting those witnesses within 48 hours of receiving the disciplinary report. The inmate must also indicate what testimony each witness is expected to provide. K.A.R. 44-

5

13-306. If the hearing officer or other prison official refuses to allow a witness to testify, the official bears the burden of justifying that refusal. *Washington*, 37 Kan. App. 2d 237, Syl. ¶¶ 5-6.

However, there is no indication that Amos ever requested witnesses. The disciplinary report indicates that he received it on July 28, 2014, but no other documentation predating the hearing exists. Moreover, Amos provides no information either below or on appeal as to what information his allegedly rejected witnesses might have provided. Given that Amos' petition needed to allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature," it is clear that these vague assertions about being denied a chance to call witnesses is insufficient to sustain a claim. See *Johnson*, 289 Kan. at 648.

In his last argument concerning the hearing itself, Amos claims that his staff assistant failed to actually assist him. In certain situations, a hearing officer must appoint a facility staff member "to act as staff assistant to aid the inmate at the disciplinary hearing and to question relevant witnesses." K.A.R. 44-13-408(a). Although the record is unclear why exactly the hearing officer in this case appointed a staff assistant for Amos, one of the situations requiring appointment of a staff assistant is when "[t]he inmate either refuses to attend or has been removed from the hearing." K.A.R. 44-13-408(a)(5).

Regardless of the reason for the appointment, Amos contends that there is no indication that his staff assistant either spoke to Amos or questioned the sole witness. The record somewhat supports this contention. The hearing officer's notes are very brief and do not disclose whether the staff assistant questioned the witness. While Amos raised objections to his "substitute counsel" in his petition, he provided no facts to support this allegation. Instead, he simply named the supposed failures by his "counsel" (presumably meaning the staff assistant) as part of a 10-point list of due process violations. This brief

6

mention certainly falls short of the shocking and intolerable conduct required to sustain a K.S.A. 2014 Supp. 60-1501 petition. See *Johnson*, 289 Kan. at 648.

In short, nothing that occurred at the disciplinary hearing constitutes the type of shocking and intolerable conduct that would entitle Amos to relief. The record indicates that he refused to participate in the hearing and never requested witnesses testify on his behalf. Because Amos' procedural due process rights were not violated, the district court properly dismissed the petition on these grounds.

### Mental health and administrative segregation

Amos next contends that his placement in disciplinary segregation rises to the level of shocking and intolerable conduct because of his substantial mental health needs. Specifically, he contends that when combined with his other stints in disciplinary segregation, this penalty will cause him psychological harm. The State responds that because Amos never raised this argument at the administrative level, he has failed to exhaust his administrative remedies regarding this issue.

As a general rule, an inmate can only file a civil action against the Secretary after exhausting his or her administrative remedies. K.S.A. 75-52,138. How this statute affects individual issues rather than the petition as a whole is unclear. In *Blanchette v. Werholtz*, No. 102,284, 2010 WL 198523, at *3 (Kan. App. 2010) (unpublished opinion), this court held that an inmate's failure to raise an issue in his administrative appeal barred him from raising it for the first time in his K.S.A. 60-1501 petition. In another case, *Carter v. Secretary of Corrections*, No. 110,480, 2014 WL 1708110, at *2 (Kan. App. 2014) (unpublished opinion), this court approved of hearing a due process claim not raised in the inmate's administrative appeal because it arose out of and was related to the disciplinary proceeding.

7

Here, the issue Amos raised for the first time in his petition does not truly arise out of his disciplinary proceeding. Rather than focusing on the proceeding itself or the appropriateness of disciplinary segregation as a penalty in this particular case, Amos alleges that a large number of outside factors, including his previous time in segregation and his mental health needs, turn this single penalty into an intolerable and unconstitutional condition of confinement. This challenge more resembles an objection to "policies and conditions within the jurisdiction of the facility" typical of a facility grievance than an appeal from a specific disciplinary action. See K.A.R. 44-15-101a(d)(1)(A). A facility grievance allows for the warden to investigate the allegations and to remedy any problem that investigation uncovers. K.A.R. 44-15-101a(e), (f). In contrast, an appeal to the Secretary from a disciplinary action is limited only to (1) whether the procedure complied with the applicable standards and procedures, (2) whether the decision by the hearing officer was supported by some evidence, and (3) whether the penalty was appropriate and proportionate to the offense under the circumstances of the case. K.A.R. 44-13-704(b). Amos' complicated allegations about his mental health, long periods in disciplinary segregation, and the potential psychological harm suffered appeared to fall outside the more limited scope of a disciplinary appeal. Therefore, it is likely that the district court's summary dismissal was proper.

In all events, if an issue about disciplinary segregation was deemed to arise out of the disciplinary hearing, Amos' argument still fails. Courts in Kansas will only review an inmate's claim that he was placed in disciplinary segregation if the Due Process Clause was violated, and there is only a violation when "the discipline imposed represents a significant and atypical hardship on the prisoner which was not contemplated within the realm of conditions of the original sentence." *Hogue*, 279 Kan. 848, Syl. ¶ 5.

Over the last roughly 20 years, "Kansas courts have consistently found that neither disciplinary segregation nor restricted privileges constitute significant and atypical hardships for purposes of a due process analysis." *Brown v. Cline*, No. 107,983, 2012 WL

5392191, at \*3 (Kan. App. 2012) (unpublished opinion); see *Starr v. Bruce*, 35 Kan. App. 2d 11, 13, 129 P.3d 583 (2005) (disciplinary segregation), *rev. denied* 280 Kan. 984 (2006); *Ramirez v. State*, 23 Kan. App. 2d 445, 447, 931 P.2d 1265 (restricted privileges), *rev. denied* 262 Kan. 962 (1997). In fact, even when a hearing officer assigned a period of disciplinary segregation lasting 1 day longer than the maximum period authorized by the governing regulation, our Kansas Supreme Court still found no atypical hardship. See *Hogue*, 279 Kan. at 855.

Without acknowledging our previous caselaw, Amos relies on a single federal district court case to support his position that his mental health issues transform his time in disciplinary segregation into an atypical hardship. That case, *Madrid v. Gomez*, 889 F. Supp. 1146 (N.D. Cal. 1995), is dramatically distinguishable from the case at bar. There, inmates assigned to the Security Housing Unit at Pelican Bay State Prison in California brought a civil rights action against the Director of the Department of Corrections. They alleged in part that the conditions in the unit were so severe that confinement there constituted cruel and unusual punishment under the Eighth Amendment to the Constitution of the United States. The situation for inmates assigned to the Security Housing Unit were harsh: they saw little natural light, spent more than 22 hours a day confined to their cells, rarely interacted with other people, and had extremely limited privileges. Based on these facts, the district court concluded that although these conditions did not generally violate the Eighth Amendment, continued confinement there constituted cruel and unusual punishment for those inmates who were either already mentally ill or "at an unreasonably high risk of suffering serious mental illness as a result of the present conditions in the [unit]." 889 F. Supp. at 1267.

Amos' present argument is rooted in the Due Process Clause, not the Eighth Amendment. Moreover, nothing in either his brief or petition suggests that the temporary conditions he faces in disciplinary segregation rise to the severe deprivation suffered by

9

the permanent residents of the unit in *Madrid*. In short, his reliance on this case is misplaced.

In conclusion, the hearing officer assigned Amos to 15 days of disciplinary segregation. This short period of restricted privileges and isolation is not an atypical hardship under Kansas law. Therefore, district court did not err in dismissing Amos' petition.

Affirmed.