NOT DESIGNATED FOR PUBLICATION

No. 126,856

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DERON MCCOY JR.,
*Appellant*,

v.

TOMMY WILLIAMS, Warden,
*Appellee*.

MEMORANDUM OPINION

Appeal from Butler District Court; JOHN E. SANDERS, judge. Submitted without oral argument. Opinion filed October 3, 2025. Reversed and remanded.

*Kristen B. Patty*, of Wichita, for appellant, and *Deron McCoy Jr.*, appellant pro se.

*Fred W. Phelps, Jr.*, deputy chief legal counsel, Kansas Department of Corrections, for appellee.

Before ISHERWOOD, P.J., WARNER and HURST, JJ.

PER CURIAM: Deron McCoy Jr. appeals the summary dismissal of his K.S.A. 60-1501 petition challenging the conditions of his confinement while in administrative segregation. We are not persuaded that the record conclusively demonstrates McCoy is not entitled to relief. Accordingly, we reverse the district court's summary dismissal of the petition and remand for further proceedings.

1

FACTUAL AND PROCEDURAL BACKGROUND

In December 2021, El Dorado Correctional Facility moved McCoy into administrative segregation following his involvement in a fight. Roughly five months after he completed his mandatory disciplinary segregation time, McCoy filed a petition for relief under K.S.A. 60-1501. He explained that he already attempted to resolve his concerns through informal and formal channels alike but received no response. The first complaint McCoy outlined in the petition was that offenders in restrictive housing were not allowed access to religious programs, in contrast to offenders in general population who were allowed to attend religious call-outs twice a week or more, depending on religious holidays. McCoy later appended an "Affidavit of truth" to elaborate on his claim of disparate treatment from the general population. McCoy stated that he also filed a grievance because he was denied food to participate in his observance of the Sabbath while in restrictive housing. He later attached an exhibit to reflect his request for Jewish inmates in segregated housing, whose religious observances require certain food items, to be allowed to purchase or otherwise be provided with the foods required to enable them to properly observe religious holidays.

McCoy explained that he wrote to the chaplain's office and requested to receive challah bread and grape juice to properly honor the Sabbath or, stated another way, to obtain the same religious-based benefits as his counterparts in general population. He also inquired what other food items were provided or available for purchase to observe the Jewish High Holy Days while he was in segregation. He received a response that the chaplain's office does not provide this service to offenders in segregation. Specifically, Inmate Organization Food Events are intended for groups, not individual inmates. Thus, challah bread and grape juice were only made available to members of the general population when they attended a banquet. Food from these events is not delivered to inmates who are unable to attend, including those whose absence is a product of their segregated status.

The warden determined that the response provided by the chaplain's office was appropriate and took no further action. The Kansas Department of Corrections (KDOC) affirmed the warden's decision, noted that McCoy offered no evidence or argument that the facility's response was wrong, and took no further action.

McCoy sought review by the district court and argued that the selective treatment carried out by the prison violated the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq., the Free Exercise Clause of the First Amendment to the United States Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The district court summarily dismissed McCoy's petition upon finding that the issue was moot because he was released from administrative segregation and returned to general population.

McCoy now brings his case to us for an analysis of whether summary dismissal of his petition was appropriate.

LEGAL ANALYSIS

McCoy argues that summary dismissal was erroneous because his petition and the exhibits he attached thereto did not conclusively establish that he was not entitled to the relief he requested. He implores this court to remand the matter with directions for the district court to conduct an evidentiary hearing and establish whether the prison could make reasonable accommodations that would enable him to observe the Sabbath in a manner consistent with his religious beliefs. The KDOC asserts that the district court properly dispensed with the matter as moot. McCoy counters that the issue is recurrent as evidenced by the fact he was returned to segregated confinement at least once during the pendency of this appeal.

3

*Standard of Review and Basic Legal Principles*

To state a claim for relief under K.S.A. 60-1501 and avoid summary dismissal, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). "[I]f it is apparent from the petition and attached exhibits that the petitioner is entitled to no relief, then no cause for granting a writ exists and the court must dismiss the petition." *Denney v. Norwood*, 315 Kan. 163, 173, 505 P.3d 730 (2022); see K.S.A. 2024 Supp. 60-1503(a). An appellate court exercises de novo review of a summary dismissal. 315 Kan. at 176.

We begin by noting that an issue is only properly considered moot when the record clearly and convincingly demonstrates that the actual controversy has ended, that the only judgment that could be entered would be ineffectual for any purpose, and that the judgment would not impact any of the parties' rights. *Mundy v. State*, 307 Kan. 280, 289, 408 P.3d 965 (2018). "Mootness can occur when, over the course of litigation, something changes that renders any judicial decision ineffectual to impact the rights and interests of the parties before it." *Sierra Club v. Stanek*, 317 Kan. 358, 361, 529 P.3d 1271 (2023).

A prison regulation may validly restrict an inmate's constitutional rights if the regulation is reasonable and rationally related to a legitimate penological goal or purpose. *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) (devising a four-part test for the validity of such regulations). Appellate courts determine the reasonableness of a regulation by applying the following factors: (1) whether there is a valid, rational connection between the regulation and the legitimate government interest; (2) whether there are other means of exercising the right available to prison inmates; (3) the impact which accommodating the asserted constitutional right would have on guards and inmates, and upon the allocation of the prison's finite resources; and (4) the

absence of ready alternatives to the regulation. *Rice v. State*, 278 Kan. 309, 321, 95 P.3d 994 (2004) (adopting the *Turner* test in Kansas).

*Analysis*

The KDOC claims that this appeal is moot because McCoy's access to a Shabbat meal became a nonissue when he was transferred from administrative segregation back to the general population. This conclusory assertion fails to firmly establish that the apparent change in McCoy's housing meets the criteria for mootness—that is, that the actual controversy has truly concluded. McCoy defends against the KDOC's assertion by noting that his ability to practice Judaism was restricted again while this appeal was pending because he was returned to administrative segregation and not provided access to his Shabbat meal. We agree with McCoy that the controversy has not necessarily ended given the fluidity of his housing status. See *McKinney v. Zmuda*, No. 126,143, 2023 WL 6528018, at *5 (Kan. App. 2023) (unpublished opinion) (declining to dismiss an appeal as moot because the problem was likely to reoccur). The KDOC's request to dismiss this appeal as moot is denied.

As noted above, a petition under K.S.A. 60-1501 must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson*, 289 Kan. at 648. McCoy did not argue to the district court, and does not argue on appeal, that he has endured any shocking or intolerable conduct. Instead, his arguments focus on the KDOC's allegedly persistent constitutional mistreatment of his religious liberty. When determining whether a 60-1501 petition sufficiently alleges a claim, "courts must accept the facts alleged by the inmate as true." *Hogue v. Bruce*, 279 Kan. 848, 850, 113 P.3d 234 (2005).

McCoy argues that, by denying his request for accommodations, the KDOC violated his right to the free exercise of religion under the First Amendment to the United

States Constitution and the protections provided through the RLUIPA. McCoy's claim centers on the RLUIPA prohibition that no government "shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," without demonstrating that the imposition furthers a compelling governmental interest and is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a), 1(a)(2).

To the extent the KDOC's actions are at odds with RLUIPA, a petition under K.S.A. 60-1501 is not the proper means by which to challenge them. Rather, such petitions are intended to provide an avenue by which to litigate claims concerning constitutional violations, not conduct that purportedly offends a federal statute. Thus, we decline to address RLUIPA as outside the scope of McCoy's 60-1501 petition.

Turning to McCoy's constitutional claims. He contends that lost access to his Shabbat meal when he is in segregation amounts to a First Amendment violation. We would note that McCoy has litigated vigorously for years to obtain access to a satisfactory kosher meal while incarcerated. *McCoy v. Aramark Correctional Services, LLC*, No. 21-cv-03269-TC-ADM, 2024 WL 663521 (D. Kan. 2024) (unpublished opinion); *McCoy v. Aramark Correctional Services*, No. 21-3269-SAC, 2022 WL 594490 (D. Kan. 2022) (unpublished opinion); *McCoy v. Aramark Correctional Services, LLC*, No. 5:16-CV-03027-HLT, 2020 WL 5877613 (D. Kan. 2020) (unpublished opinion); *McCoy v. Aramark Correctional Services*, No. 16-3027-CM-KGG, 2019 WL 121115 (D. Kan. 2019) (unpublished opinion); *McCoy v. Aramark Correctional Services*, No. 16-3027, 2018 WL 1366267 (D. Kan. 2018) (unpublished opinion); *McCoy v. Aramark Correctional Services*, No. 16-3027-DJW-CM, 2017 WL 2572806 (D. Kan. 2017) (unpublished opinion); *McCoy v. Henderson*, No. 12-3051-SAC, 2013 WL 823380 (D. Kan. 2013) (unpublished opinion); *McCoy v. Henderson*, No. 12-3051-SAC, 2012 WL 1405857, at *6 (D. Kan. 2012) (unpublished opinion).

To sustain his current claim that the KDOC's conduct violates the Free Exercise Clause, McCoy must show that the institution substantially burdened his ability to practice his sincerely held religious beliefs. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). While "prisoners have a constitutional right to a diet conforming to their religious beliefs," *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002), one religiously significant meal per week, such as what is at issue here, better aligns with ritualistic practices than with sustenance. In that respect, McCoy's issue differs considerably from much of the precedent available.

Thus, we must conclude that the district court erred in summarily dismissing the petition. McCoy was never afforded the opportunity to demonstrate that by eliminating his access to these foods while in administrative segregation on a Sabbath day, the KDOC placed a substantial burden on his ability to practice his religious beliefs. We recognize that the KDOC may counter by asserting that its decision is driven by valid penological interests and offer evidence relevant to the *Turner* factors, such as the impact the prison is likely to weather if it makes the religious accommodation McCoy is pursuing. The district court must then simply balance the factors from *Turner*, according wide-ranging deference to prison administrators in the adoption and execution of prison policies, and make a determination of whether the restriction that ultimately affected McCoy is reasonable. *Rice*, 278 Kan. at 321-22.

We offer no opinion on whether McCoy's lack of access to Shabbat foods imposed a substantial burden on his religious practice, or whether the prison's competing needs counterbalance any such burden. We simply conclude that the record does not conclusively show that McCoy is not entitled to relief. Thus, we reverse the district court's summary dismissal and remand for further proceedings on McCoy's constitutional claims.

Reversed and remanded.